UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| DOUGLAS ROBINSON, BOARD OF TRUSTEES CHAIRMAN, ON BEHALF OF NORTHWEST INDIANA REGIONAL COUNCIL OF CARPENTERS PENSION TRUST FUND, ET AL., <br><br> PLAINTIFFS/COUNTER-DEFENDANTS, <br><br> VS. <br><br> WOODBRIDGE CONSTRUCTION AND CARPENTRY, INC. AND JOSEPH CHIARELLA, <br><br> DEFENDANTS/COUNTER-PLAINTIFFS | CAUSE NO. 2:12-CV-178-RLM-APR |

OPINION and ORDER

This is a suit by labor union pension funds and their officers to recover unpaid contributions from an employer; the employer seeks a set-off reflecting payments it made to other pension funds. Trial was conducted to the court without intervention of a jury on May 16, 2014. This opinion is intended to satisfy the requirements of Federal Rule Civil Procedure 52(a)(1).

As a signatory to a collective bargaining agreement with the Indiana/Kentucky/Ohio Regional Council of Carpenters, defendant Woodbridge Construction and Carpentry, Inc. is bound by the terms of the Northwest Indiana Regional Council of Carpenters Pension Trust Fund, the Indiana/Kentucky/Ohio Regional Council of Carpenters Defined Contribution Trust Fund, the Indiana/Kentucky/Ohio Carpenters Welfare Fund, the Indiana Carpenters Apprenticeship Fund and Journeyman Upgrade Program, and the

United Brotherhood of Carpenters Apprenticeship Training Fund of North America. The pension funds are employee benefit funds governed by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.*

From January 1, 1999 through June 30, 2007, Woodbridge sent carpenters from locals in Indiana, Illinois, and Michigan to job sites in Indiana, Illinois, and Michigan. Woodbridge paid into the Indiana pension funds benefits that accrued for Indiana carpenters, regardless of where the work was performed. So, no matter whether a particular carpenter associated with an Indiana local performed work in Indiana, Illinois, or Michigan, Woodbridge sent its payments to the Indiana pension funds. Similarly, Woodbridge sent payments to Illinois pension funds for Illinois carpenters regardless of where they worked and to Michigan pension funds for Michigan carpenters no matter where they worked.

That wasn't how things were supposed to be done. Under the various collective bargaining agreements, Woodbridge's payments were supposed to be tied to the place the work was performed, rather than the state of the local to which the carpenter belonged. As a result, the Indiana pension funds received payments accruing from work Indiana carpenters did in Illinois and Michigan; those payments should have gone to Illinois or Michigan pension funds. Conversely, Woodbridge sent payments accruing from work done in Indiana to Illinois and Michigan; the Indiana pension funds should have received those

moneys even though they reflected work done by Illinois and Michigan carpenters.

The pension funds (at least the Indiana funds, which are the only ones about which evidence was presented) had no way of knowing payments were taking detours because the payments contained no information about the location of the work. At some point (the time isn't clear from the record), the Illinois pension fund had an audit performed (the record doesn't disclose why) and decided to take no action with respect to Woodbridge (the record doesn't disclose why the fund made that decision). More importantly for this case, the Indiana pension funds caused an audit to be conducted after 2007.

The auditors found (and Woodbridge doesn't dispute) that from 1999 through 2003, Woodbridge underpaid contributions to the Indiana funds by $44,392.28 and deductions by $8,630.25. Late payment assessments totaled $160.90, and adjustments arising from Woodbridge's use of the wrong hourly rate amounted to $682.75. The interest and liquidated damages required by ERISA and the labor contract were $72,417.21 and 5,302.26 respectively. The audit fees, as shown by Plaintiff's Exhibit 9, were $42,150.00 and the auditor's mileage amounted to $25.22. The auditor's fees are, at first blush, high — nearly as much as the unpaid contributions — but field auditor Andrew Bailey of Stewart C. Miller & Co., Inc. explained that the audits of Woodbridge were far more time-consuming than most audits because of the way Woodbridge kept its records.

For the period from January 1, 2004 through June 30, 2007, the figures were as follows: underpaid contributions – $25,506.24; deductions – $15,679.15; interest – $24,499.95; liquidated damages – $4,118.54; audit fees (*see* exhibit 11) – $10,875.00. The funds also requested an award of auditor fees accrued through the trial, but its witness wasn't able to provide that figure, so that claim fails for want of proof.

Because Woodbridge didn't make payments it was required to make on account of work in Indiana by carpenters from Illinois and Michigan, it is liable to the Indiana pension funds. 29 U.S.C. § 1145. The court must, ERISA says, award the pension funds the unpaid contributions, interest on the unpaid contributions, and the greater of that interest or liquidated damages of up to 20 percent of the unpaid contributions. 29 U.S.C. § 1132(g)(2). An award of attorney fees also is mandatory, but that sum can be calculated and awarded after judgment.

Adding together the unpaid contributions, deductions, late fees, adjustments, interest, liquidated damages, and audit fees and mileage, Woodbridge is liable to the Indiana funds in the sum of $254,439.75.

Woodbridge contends that it is entitled to a set-off (which it styled as a counterclaim) with two components. First, to the extent Woodbridge paid the Indiana pension funds for benefits for work done out of state by carpenters who belonged to Indiana locals, Woodbridge contends that the Indiana pension funds got more than they were entitled to under the memoranda of agreement.

Woodbridge claims entitlement to credit for those overpayments. Second, Woodbridge contends that to the extent it made payments to Illinois or Michigan pension funds for work their carpenters did in Indiana, the Indiana pension funds should get their money from the overpaid Illinois or Michigan pension funds. Woodbridge believes about 80 percent of the underpayments to the Indiana funds reflect money Woodbridge paid to the wrong jurisdiction. The arithmetic becomes more challenging because wages were lower, while benefits were higher, in Indiana than in the other two jurisdictions.

Why Woodbridge should get a setoff for money it paid to Illinois and Michigan funds isn't clear. The parties to this case agree that the collective bargaining agreements obligated Woodbridge to pay the Indiana funds what was due the Indiana funds, and Woodbridge didn't make all of those payments. The consumer who refuses to pay his electric bill because he mistakenly sent the money to the cable company won't have electricity much longer. Woodbridge hasn't cited any authority for the proposition that its payments to the Illinois pension fund instead of to the Indiana pension fund obliges the Indiana funds either to credit Woodbridge's account for money it didn't receive or to chase after the Illinois fund to get its payment.

The law is a little more complex with respect to the first component of Woodbridge's claim to a setoff — apparent overpayments to Indiana reflecting work Indiana carpenters performed outside Indiana.

Once the employer remits contributions to a pension plan, those contributions become assets of the pension plan, to be used exclusively for the benefit of the plan participants and beneficiaries, 29 U.S.C. § 1103(c)(1), though the plan may return mistakenly remitted contributions to the employer within six months after the plan administrator discovers the contribution was mistaken. 29 U.S.C. § 1103(c)(2)(A)(ii).

The funds venture a couple of procedural swipes at Woodbridge's claim to a setoff; neither is persuasive. The funds argue that the counterclaim contains no supporting factual allegations, but that amounts to a motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss for failure to state a claim, which had to be filed before a responsive pleading was filed. The funds also argue that the setoff request exceeds the scope of the relief sought in the counterclaim, but the pretrial order supersedes the pleadings, so the scope of the relief sought in the counterclaim has no remaining significance. DeliverMed Holdings, LLC v. Schaltenbrand, 734 F.3d 616, 628 (7th Cir. 2013). The funds also seem to argue that ERISA allows a setoff of the sort Woodbridge seeks only if Woodbridge made its contributions by "mistake of fact or law." 29 U.S.C. § 1103(c)(2)(A)(ii). The funds don't actually contend that the erroneous contributions were anything but a mistake of fact or law, and don't offer any alternative modifier for Woodbridge's misdirected contributions.

In UIU Severance Pay Trust Fund v. Local Union No. 18-U, 998 F.2d 509 (7th Cir. 1993), the court of appeals held that employers can proceed on a

restitution theory to recover contributions mistakenly made to pension funds. Id. at 512-513. Among the factors a court deciding such a case might consider, the UIU Severance Pay court noted these: whether these were the sort of payments for which equity demands refund; whether the employer has delayed its claim so long that laches bars recovery; whether the employer's long continuation of the payments without question has ratified the past payments; and whether the employer seeking relief can show the pension funds would be unjustly enriched if the employer isn't awarded restitution. Id. at 513. These factors don't favor Woodbridge, and Woodbridge hasn't persuaded the court that any other factors warrant equitable restitution.

The laches factor weighs most heavily. As the court understands it, plan participants qualify for benefits by reaching threshold earning levels. Woodbridge reported the earnings of participants who belonged to Indiana locals, and over-reported those earnings with respect to work Indiana carpenters performed in Illinois and Michigan. Properly calculated or not, those reported earnings qualified plan participants for various benefits. An attempted retroactive recalculation could affect whether a participant's pension was truly vested, or whether an annuity was valued accurately. Plan participants relied on those calculations to make important life choices and likely to direct the degree of risk they were willing to accept for their investments. Equity can't favor having to tell a plan participant that too few of his hours in 1999 were

performed in Indiana to have qualified him for a benefit he thought he had earned.

Woodbridge hasn't shown that the Indiana funds would be unjustly enriched if the setoff is denied. Pension funds hold their assets for the benefit of the plan participants. The plan participants aren't required to monitor how the plan allocates employer contributions (certainly, a plan participant can do so, but nothing requires it). Indeed, as just noted, plan participants rely on what the funds report to them. If Woodbridge's errors caused a plan participant to receive greater or lesser benefits, this isn't the stuff of which unjust enrichment is made or for which equity demands a refund.

The length of time Woodbridge made these payments — eight and a half years, spread over three collective bargaining agreements — flows through the entire analysis. That 102 months fares poorly when compared with the six months ERISA itself allows for refund of mistaken contributions. 29 U.S.C. § 1103(c)(2)(A)(ii). Woodbridge isn't entitled to prevail on its counterclaim/request for setoff on an equitable restitution theory.

For all of these reasons, the clerk shall enter judgment for the plaintiffs and against the defendants on counts I and II of the complaint in the sum of $254,439.75. With the plaintiffs' agreement, counts III and IV of the complaint are dismissed. The clerk shall enter judgment for the plaintiffs and against the defendants on the counterclaim. The court denies the plaintiffs' motion to strike certain parts of the defendants' evidence; although the defendants

ultimately didn't succeed on their set-off/counterclaim, the evidence was relevant to the set-off/counterclaim. Federal Rule of Civil Procedure 54(d)(2) shall govern any petition for attorney fees.

SO ORDERED.

ENTERED: <u>May 22, 2014</u>

<u>    /s/ Robert L. Miller, Jr.    </u>
Judge
United States District Court